## BOB HALL V. THE STATE.

### No. 10187. Delivered November 17, 1926.

1.—Possessing Intoxicating Liquor — Search Warrant — Sufficiency Of—
Waived by Accused.

Where, on a trial for possessing intoxicating liquor for the purpose of
sale, it is shown that at the time of the search the officers who went upon
appellant's premises, informed him that they had a search warrant, where-
upon the appellant said, "You don't need any search warrant—just go ahead
and search, anywhere you want to," such statement so made by appellant
was tantamount to consenting to the search, and he thereby waived any
irregularities in the search warrant. See opinion for discussion of the
subject.

2.— Same — Argument of Counsel — Qualification of Bill — Binding on
Appellant.·

Where appellant complains of the argument of counsel for the state,
and the court qualifies his bill with the statement that he cannot say that
the language was ·used, and that his attention was .not·called to the matter
at the time, such bill, with said qualifications, presents no matter for.
revision to this court.

Appeal from the District Court of Bowie County. Tried
below before the Hon. Hugh Carney, Judge.

Appeal from a conviction for possessing intoxicating liquor
for the purpose of sale, penalty two years in the penitentiary.

The opinion states the case.

*W. W. Arnold* and *Crumpton & Boswell,* for appellant.

On insufficiency of affidavit for search warrant, appellant
cites:

Dupree v. State, 102 Tex. Crim. Rep. 455.

Mattingly v. Commonwealth, 247· S. ·W.·938.

Price v. Commonwealth, 243 S. W. 927.

State v. Peterson, 194 Pac. 342.

Youman v. Commonwealth, 224 S. W. 860.

*Sam D. Stinson,* State's Attorney,· and *Robert M. Lyles,*
Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is the possession of
intoxicating liquor for· the purpose of sale; punishment fixed at
confinement in the penitentiary· for a period of two years.

Appellant, a farmer, resided upon a tract of land consisting
of about ·100 acres, upon which there were a number of out-
houses and a dwelling house. One of the out-houses was
described ·as·a little store building, which seems to have been

used at times. for the purpose of furnishing articles to tenants and others. The premises were searched, and in the store house, which was some distance from the dwelling house, and in the barn, there were found a number of containers exhibiting the odor of whiskey, and some of them containing whiskey. Behind the counter in the store building there were found ten quarts of whiskey in fruit jars. There were other circumstances supporting the theory of the state that the whiskey was possessed by the appellant for the purpose of sale.

The judgment is attacked from various angles on account of the alleged insufficiency of the affidavit upon which the search warrant was issued. The affidavit read as follows:

"Before me, G. W. Ragland, a Justice of the Peace in and for said county, on this day personally appeared M. T. Goodwin and A. K. Neely, who, after being by me duly sworn, on his oath, deposes and says: That he has good reasons to believe, and does believe, that Bob Hall is engaged in the unlawful sale of intoxicating liquors and keeps and possesses intoxicating liquors for the purpose of sale, at, in and near the following described place, building and structure:

"One residence and all premises and out-houses in and around said residence, located about twelve miles from Texarkana, on the H. V. Beasley farm on the Index road, Bowie County, Texas, and being the Bob Hall residence; that the sale of such liquors, and the keeping of same as aforesaid, is a common and public nuisance."

. In Article 691 of the Penal Code, Revision of 1925, it is declared, in substance, that a search warrant may be issued in relation to violations of the law prohibiting the liquor traffic under Title 6, C. C. P. The statute, however, contains the following language:

"No warrant shall be issued to search a private dwelling occupied as such, unless some part of it is used as a store, shop, hotel, or boarding house, or for some purpose other than a private residence, or unless the affidavits of two credible persons show that such residence is a place where intoxicating liquor is sold or manufactured in violation of the terms of this act. The application for the issuance of and the execution of any such search warrant, and all proceedings relative thereto, shall conform as near as may be to the provisions of Title 6 of the Code of Criminal Procedure, except where otherwise provided in this title."

Title 6, which has long been in the Code, relates to search warrants for property taken by theft and other related matters,

and permits their issuance upon the affidavit of one person stating under oath, among other things, *"that he has good ground to believe"* that the property was stolen by the person named. Art. 691, supra, was enacted in 1919, and the application for a warrant to search a private dwelling, occupied as such and not otherwise used for the purposes mentioned above, differs materially from the application called for in Title 6, in that in Art. 691 the affidavit must be made by two credible persons and must show that the residence described is a place where intoxicating liquor is sold or manufactured in violation of the law. The term "show," it is claimed, has a significance different from that of belief. The following citations show the distinction: Cooley's Const. Limitations, p. 429; Veeder v. United States, 252 Fed. Rep. 414, 164 C. C. A. 338; People v. Elias, 147 N. E. 474; Swart v. Kimball, 43 Mich. Rep. 451. Upon the authorities above mentioned, it is also claimed that an essential requisite of a search warrant is that it show the facts upon which the belief is based. See Underhill on Crim. Ev. 3rd Ed., p. 1022, note 24, citing many cases. There are also many cases to the contrary. See the opinion of the Supreme Court of this state in Dupree v. State, 102 Tex. Rep. 464. These matters are not discussed in detail for the reason that the facts in hand do not seem to demand it, and the evidence is such as form the basis of a serious question whether the search made was that of a private dwelling occupied as such within the meaning of Art. 691, supra. Upon that subject the precedents are somewhat conflicting. See Thompson v. State, 96 S. W. 1085; Williams v. State, 48 Tex. Crim. Rep. 325; Marks v. State, 51 Tex. Crim. Rep. 218; Hooper v. State, 105 S. W. 816; Handy v. State, 46 Tex. Crim. Rep. 406; Reyes v. State, 51 Tex. Crim. Rep. 420; Mays v. State, 50 Tex. Crim. Rep. 391; see also Words & Phrases, 2nd Series, Vol. 4, p. 338; 32 Ency. of Law & Proc. 357.

According to the uncontroverted evidence, the officers went upon the appellant's premises and informed him that they had a search warrant, whereupon he said: "You don't need any search warrant. Just go ahead and search anywhere you want to." This court understands that the legal precedents are to the effect that one may consent to the search of his premises and thereby waive irregularities in the search warrant or dispense with a search warrant altogether. Such is the declaration in Cornelius on Search and Seizure, Sec. 17, p. 73. The citation of authorities in the notes seems to support the text. However, the circumstances from which such waiver may be inferred present

varied phases.   See Cornelius on Search and Seizure, Sec. 16 and notes, from which we quote:

"Where an officer politely and decently and without physical force has assumed to act in his official capacity, a peaceable citizen should not resist the action even though he knows the officer is, as to the act, greatly exceeding his authority.   The courts have repeatedly held that acquiescence under such circumstances will not be taken to be a consent to an unlawful search or arrest, but merely a peaceable submission to an officer of the law."

Among the cases illustrating the text, holding that the mere acquiescence of the accused does not constitute a waiver, are: Hampton v. State, 148 Tenn. 155, 252 S. W. 1007; Jordan v. Commonwealth (Ky.), 250 S. W. 1004; Mattingley v. Commonwealth, 197 Ky. 583, 247 S. W. 938; Smith v. State, 133 Miss. 730, 98 So. 344.   Among the cases in which the circumstances have been deemed sufficient to establish a waiver are: Gray v. Commonwealth, 198 Ky. 610, 249 S. W. 769; Maldonate v. United States, (C. C. A.) 234 Fed. 853; United States v. Gouled, 253 Fed. 242; United States v. Barry, 260 Fed. 291; Perlman v. United States, 247 U. S. 7, 62 L. ed. 950; Commonwealth v. Tucker, 189 Mass. 457, 76 N. E. 127; Smith v. Commonwealth, 197 Ky. 192, 246 S. W. 449; Meno v. State, (Ind.) 142 N. E. 382; Frix v. State, 148 Tenn. 478, 256 S. W. 449; Boswell v. State, (Okla. Cr.) 222 Pac. 707; Compton v. Muskogee, (Okla. Cr.) 225 Pac. 562; State v. Uotila, (Mont.) 229 Pac. 724.   In a case where the facts relied upon as a waiver are controverted, and possibly where the language used is ambiguous, it would be necessary that the question of waiver be determined by the jury. See People v. Foreman, 218 Mich. 591, 188 N. W. 375; State v. Kanellos, 124 S. Car. 514, 117 S. E. 640.

In the present instance, the language imputed to the appellan is neither controverted nor ambiguous.   It is more specific in favor of the waiver than that in some of the cases to which reference has just been made, notably, Meno v. State, (Ind.) 142 N. E. 382; Frix v. State, 148 Tenn. 478, 256 S. W. 449; Boswell v. State, (Okla. Cr.) 222 Pac. 707.

Upon the evidence adduced and the authorities mentioned, we are of the opinion that, upon the doctrine of waiver, the court was not in error in receiving the testimony of the officers relating the discoveries made upon their search of the appellant's premises.

The complaint of the denial of the second application for a continuance, in the light of the court's explanation of the bill, from which it appears that there was a lack of diligence to

secure the deposition of the absent witness, fails to show error.

In qualifying the bill of exceptions complaining of the remarks of the district attorney, the trial judge states that he cannot say that the language was used, and that his attention was not called to the matter or objection made at the time or special charge requested at the trial; that the first notice of the complaint came to him in the bill of exceptions presented in March following the adjournment of court in December.

We fail to perceive any reversible error in the trial. The judgment is therefore affirmed.

*Affirmed.*